J. A. & E. D. TRANSPORT CO. et al.
v. RUSIN.

No. 11696.

Court of Civil Appeals of Texas.
San Antonio.

April 23, 1947.

Rehearing Denied May 21, 1947.

Scott, Wilson & Cureton, of Waco, for appellants.

D. F. Davis and Tom H. King, both of San Antonio, for appellee.

NORVELL, Justice.

This is an appeal from an order overruling a plea of privilege. The trespass clause of exception 9 of Article 1995, Vernon's Ann.Civ.Stats., is involved.

The appellee here (plaintiff below) is Thomas J. Rusin. Appellants (defendants below) are J. A. & E. D. Transport Company, a party under Rule 28, Texas R.C.P., Coy Dillard and Edna Dillard. Appellants filed a joint plea of privilege. The style of the case, as stated in this pleading, was Thomas J. Rusin v. J. A. & E. D. Transport Company, and contained the following wording: "Come now the defendants and each of them, including Coy Dillard and Edna Dillard, and file this, their plea of privilege * * *." It was alleged defendants were not residents of Bexar County and that "each of such defendants were residents of Edwards County."

This plea was controverted and a trial had to a jury, which returned a special issue verdict upon which the order appealed from is based.

The only witness who testified was Thomas J. Rusin, the appellee. His testimony, for the most part, was of such a nature that it could easily have been controverted if untrue. Appellants, however, offered no evidence whatsoever.

It appears that during the daytime (6:15 P.M.) on May 10, 1946, Lieut. Rusin was driving his automobile in a northerly direction along Nogalitos Street, toward the central or business district of the City of San Antonio. Nogalitos Street is subject to heavy traffic and runs into South Flores Street, which is one of the main traffic arteries in the southern part of the City. When Lieut. Rusin reached a point about a block south of the South Flores-Nogalitos intersection, he stopped his automobile and gave a signal with his left hand, notifying the vehicles following him to stop also.

The reason for his stopping was that the traffic regulation signals at South Flores and Nogalitos Streets had halted all northbound traffic, and a line of automobiles and trucks about a block long was halted all along Nogalitos Street.

While Rusin's car was motionless and he was waiting for the light signal to change, his car was violently struck from behind by a north-bound vehicle, which caused his automobile to ram into the vehicle immediately ahead. Rusin suffered personal injuries as well as damage to his automobile as a result of the impact and collision.

The vehicle which ran into his automobile was a truck outfit, consisting of a tractor and trailer, which bore the insignia of "J. A. & E. D. Transport Company."

The jury found that the driver of the truck was guilty of three specific acts of negligence at and immediately prior to the time of the collision, to-wit: (1) In driving the truck at a rate of speed in excess of thirty miles per hour, (2) in not having the truck under proper control, and (3) in failing to keep a proper lookout.

By their first point here, appellants contend that the order must be reversed because there "is absolutely no competent evidence that Coy and Edna Dillard owned the vehicle involved in the collision."

Rule 28, R.C.P., reads as follows:

"A partnership or other unincorporated association, or an individual doing business under an assumed name, may sue or be sued in the partnership, assumed or common name for the purpose of enforcing for or against it a substantive right."

The effect of this rule is to treat the partnership, unincorporated association or business operated by an individual under an assumed name as a legal entity, at least to the extent of obtaining and enforcing a judgment against it. Mims Bros.

v. M. A. James, Inc., Tex.Civ.App., 174 S.W.2d 276.

In this case the "J. A. & E. D. Transport Company," whether it be in fact a partnership or a business operated under an assumed name, entered an appearance in this cause as a legal entity under the rule by filing a plea of privilege. We don't know what form of citation was employed to bring the J. A. & E. D. Transport Company into court, but we assume that the attorney who entered its appearance and who also signed an appeal bond in its behalf as a principal and appellant, was and is duly authorized to represent it. The J. A. & E. D. Transport Company was a party defendant below and is a party appellant here.

■ The operation of Rule 28, in connection with the venue statutes, was discussed by the El Paso Court of Civil Appeals in Heid Bros. v. Mueller-Huber Grain Company, 185 S.W.2d 470, 471, wherein it was said:

"Whether the partnership be regarded as a legal entity created by Rule 28, separate and distinct from the partners who compose it, or merely as a contractual status between the partners, it can have no residence for venue purposes other than the residence of the partners, in the absence of a residence prescribed by statute. There is a well-recognized distinction between 'residence,' as used in our venue statute, and the principal office or place of business of a partnership. E. I. Du Pont de Nemours Powder Co. v. Jones Bros., D. C., 200 F. 638. Therefore, though the plea of privilege be filed by the legal entity, the only basis for it is the residence of the partners. If this were not so, there could be no valid plea of privilege by a partnership, the legal entity, to be sued in the county of its residence, since apart from the residence of the partners the legal entity has no residence."

We think it apparent that under this holding, which we believe is correct, that the effect of sustaining appellants' point would be at the same time to hold that the plea of privilege of the J. A. & E. D. Transport Company was fatally defective and consequently the venue as to it could be maintained in Bexar County where the suit was filed.

We decline to adopt a construction of the plea of privilege which would bring about this result.

■ Appellee alleged that Coy Dillard and Edna Dillard are doing business under the name of "J. A. & E. D. Transport Company." The J. A. & E. D. Transport Company, Coy Dillard and Edna Dillard filed a joint plea of privilege saying that each of them reside in Edwards County. The J. A. & E. D. Transport Company can not have a "residence" in Edwards County unless the owner or owners of the business reside there. The plea, if valid as to the transport company, must be construed as asserting that the transport company resides in Edwards County, because Coy Dillard and Edna Dillard reside in said county and are the owners thereof. Based upon the record, we hold that for venue purposes Coy Dillard and Edna Dillard are operating and doing business under the name of J. A. & E. D. Transport Company; in other words, that they are the J. A. & E. D. Transport Company.

This rule works no hardship upon the individual appellants who joined in the plea of privilege. If one or more of them had no connection with the J. A. & E. D. Transport Company and wished to avoid the construction of the plea which we have adopted, they could have pleaded that they had no interest in the company, rather than asserting, in effect, that they were the owners thereof.

■ Having concluded that, for the purposes of this appeal, Coy Dillard and Edna Dillard are the J. A. & E. D. Transport Company, it follows that the uncontradicted testimony of "the fact that the truck bore appellant's insignia, unexplained, was sufficient to raise the inference that (they) owned the truck and (were) operating it at the time of the collision." Younger Bros. v. Power, Tex.Civ.App., 92 S.W.2d 1147, 1149. The case of Globe Laundry Co. v. McLean, Tex.Civ.App., 19 S.W.2d 94 is applicable here. We paraphrase what was said in that opinion. The testimony showed that the name of appellants under which they were operating and doing busi-

ness was printed upon the truck. This testimony, uncontradicted and unexplained by appellants, was sufficient to raise the inference that appellants owned the truck and that it was being operated by one of its servants in the ordinary discharge of the duties of his employment. See also J. H. Robinson Truck Lines v. Jones, Tex.Civ.App., 139 S. W.2d 127; Freeman v. Texas Bread Co., Tex.Civ.App., 111 S.W.2d 307. We overrule appellants' first point.

As above pointed out, the jury found that the driver of the truck was guilty of three acts or omissions which constituted negligence. The jury also answered the attendant questions of proximate cause favorably to appellee. Appellants, by their second and third propositions, assert that, (1) there is no competent testimony that the truck was being driven at a rate of speed in excess of thirty miles per hour, and that (2) the issue relating to excessive speed was improperly submitted to the jury.

■■ The evidence supporting the conclusion that the truck was being driven in excess of thirty miles per hour immediately prior to the collision is not as satisfactory as it might be. However, appellants' point raises a question of "no evidence" and not a question of "sufficient evidence." Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W. 2d 982. Rusin testified that he saw the truck approaching through his rear-view mirror. Although he stated he could not judge the speed of the approaching vehicle correctly from the rear mirror alone, the impact was sufficient to ram his stationary automobile into the vehicle immediately ahead, and smash both the front and rear end of his car. That immediately before the collision he heard the screeching of tires upon the pavement caused by the setting of brakes and that immediately after the collision he examined the skid marks of the truck, made upon the pavement, and found them to be forty-five or fifty feet in length.

This being the record, it is our opinion, that it can not be said that there was "no evidence" of excessive speed. We overrule appellants' second point.

Appellants' contention that the issue of excessive speed was improperly submitted is predicated upon two Supreme Court cases, namely, Northeast Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487, and Barron v. James, Tex.Sup., 198 S.W.2d 256.

In our opinion appellants' argument is erroneous in attributing to Barron v. James, a far too sweeping field of application, whereas the rules therein announced were intended to have application only to those cases having a similar factual basis. However, the argument proceeds as follows:

In Northeast Texas Motor Lines v. Hodges [138 Tex. 280, 158 S.W.2d 489], the Supreme Court said:

"We believe that Special Issue 15-G, given at the request of petitioner, *'Do you find from a preponderance of the evidence that on the occasion in question, J. L. Hodges failed to have his truck under proper control?'* included the subject matter of refused requested issue No. 7 as to whether Hodges was operating the truck at such rate of speed as that he could not stop it within his range of vision, and included the inquiry in refused requested issue No. 12 as to whether he failed to reduce the speed of his truck upon meeting an approaching automobile that had blinding lights. If he was operating his truck at such speed that he could not stop it within his vision range, if he failed to reduce its speed upon meeting the blinding lights of an approaching automobile, manifestly *he was failing to have his truck under proper control.* The issue given and the two refused related alike to the *manner in which Hodges operated his truck* immediately before he collided with petitioner's truck, that is, his conduct after he met the car with the blinding headlights, this last circumstance being pleaded by both sides, fully developed in the testimony and therefore presumably well understood by the jury. The several inquiries under consideration were merely various phases and different shades of meaning of one ultimate defensive fact issue, that is, *lack of proper control of his truck by Hodges.* Having given such issue once in the form of Special Issue No. 15-G, above quoted, the trial court properly refused to repeat it twice in other language as carried in requested issues 7 and 12. It follows, as a matter of course, that he was likewise correct in refusing

698

the ancillary issues of negligence and contributing proximate causation tendered in connection with said requested issues 7 and 12."

In Barron v. James [198 S.W.2d 260], the Supreme Court said:

"In answer to special issues, the jury found that the driver of the bus *failed* to have the bus under proper control immediately before and as he approached the place where the bus and the horse came together, and that this failure was negligence and the negligence a proximate cause of the collision; that the driver *failed* to keep a proper lookout as he approached and undertook to pass respondent and the horse he was riding, and that this failure was negligence and the negligence a proximate cause of the collision; * * * In none of the answers to the issues was there a finding of active negligence. In each answer the jury found merely a negligent omission or failure on the part of the driver to do something which it was his duty to do. None of these is a finding of trespass."

Upon the basis of these cases, appellants say that the issue as to lack of proper control included the issue of excessive speed, therefore the narrower issue should not have been given, or if given is controlled by the broader issue of lack of proper control, which is a finding of passive negligence as distinguished from active negligence and will not support a "trespass."

This concept of active and passive negligence was introduced into the venue law of Texas by the case of Ricker, Lee & Co. v. Shoemaker, 1891, 81 Tex. 22, 16 S.W. 645, decided long before the automobile came into common use.

In connection with this distinction and its place in the substantive law of torts, it is said in Corpus Juris that:

"It has been said that, strictly speaking, negligence imports omission rather than commission, but in a legal sense every omission to perform a duty imposed by law for the avoidance of injury to persons or property may consitute negligence, and the result is the same whether the duty is to do, or to refrain from doing, a certain thing. It is accordingly well settled that actionable negligence may consist in either omission or commission, either omitting to do something which in the exercise of ordinary care should have been done or doing something which in the exercise of ordinary care should not have been done. A distinction is drawn, in some cases, between negligence in doing what a prudent person would not do, which is termed active or positive negligence, and the omission to do what a prudent person would do, which is termed passive or negative negligence. Such a distinction is, however, of no practical importance as bearing on liability for negligence, except in cases where the measure of defendant's duty to plaintiff is determined by plaintiff's status as invitee, licensee, or trespasser, but it is of importance as affecting the right of contribution or indemnity between wrongdoers. Some courts have considered that no such distinction should be recognized in negligence actions." 45 C.J. 637, § 15.

In one of the cases cited in the Corpus Juris notes, Cederson v. Oregon Ry. & Nav. Co., 38 Or. 343, 62 P. 637, 646, 63 P. 763, it was said:

"Negligence, when applied to torts, is a negative quality * * * and to apply to it the qualifying terms 'active' or 'passive' seems inappropriate and incongruous. There are degrees of negligence, such as slight and gross; but these are not indicated by the terms 'active' and 'passive.' Nor does it occur to us that the nature of the act, whether of omission or of commission, should make any difference in the degree of care, precaution, skill, or vigilance that should be required in a given case."

■ Considerable difficulty has been experienced in applying the active and passive distinction to venue cases involving automobile collisions. We think the view held by the majority of the Courts of Civil Appeals is that generally the driving of an automobile is a positive and affirmative act. In the majority of collision cases the fact that the defendant or his agent is actively operating or driving an automotive vehicle is undisputed and hence not submitted to the jury, but only that element of the positive act which makes the same wrongful. This seems to follow out the principle announced in Ricker, Lee & Co. v. Shoemak-

er, 81 Tex. 22, 16 S.W. 645. If the negligence be operative at the time of the collision, the negligence is regarded as active. If, on the other hand, the negligence be non-operative in that the negligent act has been completed, the negligence is said to be passive, although it does give rise to a dangerous condition. This is well illustrated by the case of Murray v. Jones, Tex.Civ. App., 56 S.W.2d 276. In speaking of this case, it was said in Sherrod v. Bird, Tex. Civ.App., 155 S.W.2d 422, 425, that:

"A reading of the opinion will disclose that Jones, the policeman, could not have avoided striking Murray's automobile, and the opinion is not based upon any deliberate or negligent act of the policeman but rather upon the fact that any trespass or crime that may have been committed by Murray or his chauffeur had already been committed and completed before the accident occurred. Although it could not have been more than a mere instant which elapsed between the stopping of the Murray car and the collision, yet the court held that the suit was not based upon a trespass as contemplated by the venue statute."

Barron v. James, as is apparent from a reading of the opinion of the Court of Civil Appeals and the Supreme Court (198 S.W.2d 245 and 256), deals with a particular fact situation. It appears that, except for the action of plaintiff's horse in jumping into the bus or immediately into the path of the bus, no injury would have occurred had the bus driver continued to operate the bus as he had been operating it prior to the time the dangerous situation was brought about by the action of plaintiff's animal.

The factual situation in this case is wholly dissimilar to that of Barron v. James, but more nearly like that disclosed in Mays v. Smith, Tex.Civ.App., 95 S.W.2d 1342, 1343, wherein it was said:

"The statement made of the evidence is sufficient to support the following conclusions: (a) Smith was killed in a collision between his automobile and appellants' truck; (b) the collision resulted from the fact that appellants drove their truck into the back end of the Smith automobile; and, (c) the collision occurred in Jackson county and was not the result of any negligence on the part of Smith. The circumstances in the case clearly raised an issue of negligence against appellants, constituting a trespass by them, sustaining the venue in Jackson county under Exception No. 9 of article 1995, Revised Statutes."

However satisfactory the distinction suggested between Barron v. James and this case may appear, we are satisfied that there is a distinction, because nowhere in the opinion is expressed an intention to overrule a long line of prior decisions of the Courts of Civil Appeals and the Supreme Court and make the question of venue under the trespass clause depend upon the particular wording selected by a trial judge in submitting issues to the jury. This is essentially the effect of appellants' contention—that a finding of excessive speed, generally considered as affirmative negligence, may be metamorphosed into a finding of passive negligence by being submitted in an issue inquiring as to a lack of proper control. The same act obviously can be stated in affirmative or negative terms, as an act of commission or of omission. The failure to slow down is driving too fast, etc.

In our opinion, the authorities cited as supporting the holding of the Supreme Court preclude an acceptance of appellants' contention. In Jackson v. McClendon, 143 Tex. 577, 187 S.W.2d 374, 376, the Supreme Court said:

"To constitute a trespass there must be an affirmative act as distinguished from a mere failure to act. Such act need not be inherently unlawful. It may be inherently right if properly performed, and yet be, if performed in a culpably negligent manner resulting in injury to another, a misfeasance or trespass as to such person. Brooks v. Hornbeck, Tex.Civ.App., 274 S.W. 162. It is pointed out in the Brooks case that the rule stated is not in conflict with the case of Connor v. Saunders, 81 Tex. 633, 17 S.W. 236. The Brooks case was cited with approval in Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062. It has been cited by the courts of civil appeals in the following cases: Latta v. Bier, Tex.Civ. App., 281 S.W. 240; English v. Miller, Tex. Civ.App., 33 S.W.2d 477; Wiese v. Becker, Tex.Civ.App., 294 S.W. 991; Rigby v

Gaines, Tex.Civ.App., 6 S.W.2d 422; McCrary v. Coates, Tex.Civ.App., 38 S.W.2d 393; Brown v. Calhoun, Tex.Civ.App., 22 S.W.2d 757; Frnka v. Beaumert, Tex.Civ. App., 290 S.W. 808; Texas Auto Co. v. Clark, Tex.Civ.App., 12 S.W.2d 655; Barnes v. Moro, Tex.Civ.App., 76 S.W.2d 831; Standard Accident Insurance Co. v. Pennsylvania Car Co., Tex.Civ.App., 15 S.W.2d 1081; Edwards v. Hawkins, Tex. Civ.App., 77 S.W.2d 1098; Prince v. Miller, Tex.Civ.App., 131 S.W.2d 1077; Odom v. Parker, Tex.Civ.App., 173 S.W.2d 328.

"It was ruled in the case of Murray v. Oliver, Tex.Civ.App., 61 S.W.2d 534, 536, that:

" 'The driving of a heavily loaded truck on a public highway without having it equipped with adequate brakes is not a mere negligent omission of duty. Such act consists not merely in the failure to equip the truck with adequate brakes, but involves the negligent operation of it in such unsafe condition, which is a positive act of negligence.'

"The Murray case has been followed by the courts of civil appeals in the following cases: Martin v. Turnbow, Tex.Civ.App., 96 S.W.2d 730; Edwards v. Hawkins, Tex. Civ.App., 77 S.W.2d 1098; Evans v. Jeffrey, Tex.Civ.App., 181 S.W.2d 709."

The definition of trespass taken from Brooks v. Hornbeck, Tex.Civ.App., 274 S. W. 162, supports the action taken by the trial court in this case. Murray v. Oliver, Tex.Civ.App., 61 S.W.2d 534, likewise supports such action. In Evans v. Jeffrey, Tex.Civ.App., 181 S.W.2d 709, 711, the Court said:

"In this case appellee was standing in the street. Appellant drove his automobile against her. Striking her with the automobile was a positive act. To determine whether the positive act of striking appellee was a trespass, it is necessary to determine whether appellant was guilty of negligence in so doing. If not, there was no trespass. If appellant was driving his automobile in a negligent manner, whether too fast, or on the wrong side of the street, or without keeping a proper lookout, he was guilty of a trespass when he hit appellee. Such conduct is no mere omission to per-

form a duty. The situation is similar to that in Murray v. Oliver, Tex.Civ.App., 61 S.W.2d 534, 536, where the court says: 'The driving of a heavily loaded truck upon a public highway without having it equipped with adequate brakes is not a mere negligent omission of duty. Such act consists not merely in the failure to equip the truck with adequate brakes, but involves the negligent operation of it in such unsafe condition, which is a positive act of negligence.'

"We think the rule is as stated in Shivers v. Hundley, Tex.Civ.App., 148 S. W.2d 440, 442: 'It has been repeatedly held that "where an injury is inflicted upon the person or property of another by an affirmative act wrongfully or negligently committed, such act constitutes a trespass * * *." ' "

We do not construe Barron v. James as overruling Jackson v. McClendon.

■ While the issue of excessive speed may have been included in the issue of failure to keep the truck under proper control, the submission of said issue was not reversible error. We overrule appellants' third point.

■ We are of the opinion that the questions of whether or not the issue of excessive speed is supported by the evidence or was properly submitted are immaterial to the disposition of this appeal as, under the particular facts of this case, the jury's findings upon the issues of lack of proper control and failure to keep a proper lookout, with the findings on the attendant proximate cause issues, taken together with the undisputed facts disclose the commission of a "trespass" in Bexar County.

The order appealed from is affirmed.

## On Motion for Rehearing and Motion to Certify Questions to the Supreme Court.

■ It is stated in 9 Blashfield Cyclopedia of Automobile Law and Practice, Perm.Ed., § 6056, page 367, that:

"The general rule drawn from these particular cases and supported by the great weight of authority is that the fact that the

name of the defendant was painted or inscribed in some manner on the motor vehicle which inflicted the injury sued for raises a presumption, or is prima facie evidence, that the defendant owned such vehicle, and that the driver was using it in defendant's behalf.".

The following Texas cases are cited as supporting the general rule: Gladewater Laundry & Dry Cleaners v. Newman, Tex. Civ.App., 141 S.W.2d 951; Wilhite v. Horton, Tex.Civ.App., 116 S.W.2d 807; Freeman v. Texas Bread Co., Tex.Civ.App., 111 S.W.2d 307; Younger Bros. v. Power, Tex. Civ.App., 92 S.W.2d 1147.

Appellants contend that the rule stated applies only to corporations and not to other forms of business organizations. With this contention we do not agree. The rule is one of presumption or inference. The class of vehicles to which it relates is "branded" commercial vehicles, that is, trucks and automobiles bearing the insignia of a business, regardless of whether or not the business be incorporated, be a partnership, or be one owned by an individual or group of individuals.

The basis of the rule is the well-known and usual practice of commercial firms relating to branded vehicles.

Such vehicles are generally operated by employees of the owners thereof within the course of their employment. This is obvious to all who care to observe the movements of produce, commodities and persons being transported over the highways of this State. The use of a branded vehicle for an unauthorized purpose or by an unauthorized individual is a departure from the common and the usual, so that when it occurs, the corporation, partnership or individual whose insignia appears upon the vehicle must disclose the unusual circumstance and dispel the presumption or inference. Obviously, the rule of inference applicable to branded vehicles is not necessarily the same as the rules applicable to other types of vehicles.

By applying the rule stated to the evidence of this case, we reach the conclusion that the truck involved was owned by J. A. & E. D. Transport Company and that the driver thereof was using it in behalf of said J. A. & E. D. Transport Company at the time of the collision complained of.

We think it reasonably clear from the original opinion that the conclusion reached by us that for venue purposes Coy Dillard and Edna Dillard are the owners of J. A. & E. D. Transport Company is not based upon any rule of inference or presumption relating to the law of evidence. The matter is one of pleading involving as it does a particular form of business organization which has no residence for venue purposes apart from the residence of those who own such business. Consequently, we construe the plea of privilege as asserting that the J. A. & E. D. Transport Company resides in Edwards County because its owners reside in said county. This holding is not based upon "the piling of one presumption upon another presumption."

Appellants contend that we are in conflict with Barron v. James, Tex.Sup., 198 S.W.2d 256, and, by a supplement to their motions, say that we are in conflict with the decision of the Ft. Worth Court of Civil Appeals in the case of Van Zandt v. Schell, 1947, 200 S.W.2d 725.

The interpretation of the holding of Barron v. James by the Ft. Worth Court differs from that placed thereon by us in the original opinion. Likewise, our construction of said holding is at variance with the views expressed by Chief Justice Bond of the Dallas Court of Civil Appeals in his dissenting opinion in Dallas Ry. & Terminal Co. v. Harmon, 200 S.W.2d 854, loc. cit. 856, a case involving indemnity between tort feasors, the field in which the distinction between active and passive negligence was developed as a matter of substantive tort law.

In view of these opinions, we have carefully re-examined our original decisions and have decided to adhere thereto. We remain firmly of the opinion that the case of Jackson v. McClendon, 143 Tex. 577, 187 S.W.2d 374, 376, supports our original holdings in this case. In the case cited, the Supreme Court said: "In line with these cases (Brooks v. Hornbeck, Tex.Civ. App., 274 S.W. 162, cited with approval in Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062; Murray v. Oliver, Tex.Civ.

App., 61 S.W.2d 534; Martin v. Turnbow, Tex.Civ.App., 96 S.W.2d 730; Edwards v. Hawkins, Tex.Civ.App., 77 S.W.2d 1098; Evans v. Jeffrey, Tex.Civ.App., 181 S.W. 2d 709, among others) it is clear, we think, that the act of 'filling the well with liquid cement * * * *without* having previously set up and connected machinery of sufficient capacity to be used to remove the cement before it became hardened and set' is a trespass within the meaning of the statute and constitutes such an active and positive act of negligence sufficient to fix venue in the county where said acts were committed." (Italics supplied.)

We do not believe the Supreme Court would have cited Jackson v. McClendon with approval in Barron v. James had it intended to overrule its former decision.

Although we are admittedly in conflict with an opinion rendered by another Court of Civil Appeals (Van Zandt v. Schell, supra) upon a question of law, and refuse to concur with said conflicting opinion, appellants' motion to certify questions to the Supreme Court will be overruled.

Rules 462 and 465, R.C.P. should be construed with Rules 475, R.C.P., which reads as follows:

"Rule 475. Original Proceedings: Petition for Mandamus to Compel Certification. Where a motion for leave to file a petition for mandamus against a Court of Civil Appeals to require that court to certify a question on the ground of conflict is granted, the petition shall be docketed and set down for hearing both on the question whether there is a conflict and on the merits of the question involved in the conflict. If the petition be granted the mandamus will then issue unless the Court of Civil Appeals conform its ruling and decision to those of the Supreme Court; or the Supreme Court may, upon such hearing, if it be deemed proper, direct the Court of Civil Appeals to conform its ruling and decision to those of the Supreme Court, without the necessity of certifying the question to the Supreme Court."

Under the provisions of Rule 465, R.C.P., a motion to certify is a prerequisite to the filing of a petition for mandamus in the Supreme Court. Hursey v. Bond, 141

Tex. 337, 172 S.W.2d 305. This motion may be filed at any time within fifteen days after the rendition of an order overruling a motion for rehearing in the Court of Civil Appeals. When the motion to certify is overruled, the movant may then apply to the Supreme Court for a writ of mandamus under the provisions of Rule 475, R.C.P. The actual issuance of the writ, in the event the Supreme Court be of the opinion that the Court of Civil Appeals should have conformed to the decision with which it is in conflict, is, however, contingent upon the continuing refusal of the Court of Civil Appeals to so conform. Consequently, despite our action in overruling the motion for rehearing, we have authority to change our decision in the case so as to make it conform to such opinion as may be rendered by the Supreme Court in passing upon a petition for mandamus. We decline, therefore, to certify questions to the Supreme Court prior to the time such opinion is rendered.

Appellants' motion for rehearing and motion to certify are both overruled.